**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Case No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| SUNTRUST BANKS, INC., WILLIAM H. | : **SECTIONS 14(a) AND 20(a) OF THE** |
| ROGERS, JR., AGNES BUNDY SCANLAN, | : **SECURITIES EXCHANGE ACT OF** |
| DALLAS S. CLEMENT, PAUL R. GARCIA, | : **1934** |
| M. DOUGLAS IVESTER, DONNA S. | : |
| MOREA, DAVID M. RATCLIFFE, FRANK P. | : **JURY TRIAL DEMANDED** |
| SCRUGGS JR., BRUCE L. TANNER, | : |
| STEVEN C. VOORHEES, THOMAS R. | : |
| WATJEN, | : |
| | : |
| Defendants. | |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against SunTrust Banks, Inc. ("SunTrust or the "Company"), the members SunTrust's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of SunTrust by BB&T Corporation ("BB&T").

2.  Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on March 8, 2019 with the United States Securities & Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby SunTrust will merge with and into BB&T with BB&T as the surviving corporation (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each SunTrust common share issued and outstanding will be converted into the right to receive 1.295 shares of BB&T common stock, valuing SunTrust at $62.85 per share based on the closing price of BB&T common stock on February 6, 2019 (the "Merger Consideration").

3.      The consideration SunTrust stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company. Defendants have now asked SunTrust's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning, among other things, (i) SunTrust's and BB&T's financial projections, relied upon by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman Sachs. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SunTrust stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to SunTrust's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1390, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in ***any federal district court.***" *Id.* at 1316 (emphasis added).

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or

3

transact business in this District. Indeed, SunTrust's common stock trades on the New York Stock Exchange, which is headquartered in this District, and SunTrust hired its financial advisor, Goldman Sachs, who is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of SunTrust common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Agnes Bundy Scanlan has served as a member of the Board since 2017.

11. Individual Defendant Dallas S. Clement has served as a member of the Board since September 2015.

12. Individual Defendant Paul R. Garcia has served as a member of the Board since 2014.

13. Individual Defendant M. Douglas Ivester has served as a member of the Board since 1998 and will retire from the Board at the Annual Meeting of Shareholders on April 23, 2019.

14. Individual Defendant Donna S. Morea has served as a member of the Board since 2012.

15. Individual Defendant David M. Ratcliffe has served as a member of the Board since 2011.

16. Individual Defendant William H. Rogers, Jr. has served as a member of the Board since 2011 and as Chairman of the Board since January 1, 2012.

17. Individual Defendant Frank P. Scruggs Jr. has served as a member of the Board since 2013.

18. Individual Defendant Bruce L. Tanner has served as a member of the Board since 2015.

19. Individual Defendant Steven C. Voorhees has served as a member of the Board since January 1, 2018.

20. Defendant SunTrust is incorporated in Georgia and maintains its principal offices at 303 Peachtree Street, N.E. Atlanta, Georgia 30308. The Company's common stock trades on the New York Stock Exchange under the symbol "STI."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction Undervalues SunTrust

23. SunTrust is a provider of financial services. The Company's principal subsidiary is SunTrust Bank (the Bank). The Company's business segments include Consumer Banking and Private Wealth Management, Wholesale Banking, Mortgage Banking and Corporate Other. The Company offers a line of financial services for consumers, businesses, corporations, institutions and not-for-profit entities, both through its branches (located primarily in Florida, Georgia, Maryland, North Carolina, South Carolina, Tennessee, Virginia, and the District of Columbia), and through other national delivery channels.

24. On February 7, 2019, the Company and BB&T jointly announced the Proposed Transaction:

> ATLANTA and WINSTON-SALEM, N.C., Feb. 7, 2019 /PRNewswire/ -- SunTrust Banks, Inc. (NYSE: STI) and BB&T Corporation (NYSE: BBT) announced today that both companies'

boards of directors have unanimously approved a definitive agreement to combine in an all-stock merger of equals valued at approximately $66 billion. The combined company will be the sixth-largest U.S. bank based on assets and deposits.

The pro forma company will have approximately $442 billion in assets, $301 billion in loans, and $324 billion in deposits serving more than 10 million households in the United States, with leading market share in many of the most attractive, high-growth markets in the country. The incremental scale positions the new company to achieve industry-leading financial and operating metrics with the strongest return profile among its peers.

In a reflection of the equal contribution both banks bring to the new institution, the combined company will operate under a new name and brand, which will be determined prior to closing. The combined company's board of directors and executive management team will be evenly split between the two institutions. A new corporate headquarters will be established in Charlotte, NC, including an Innovation and Technology Center to drive digital transformation. In the current home markets for both companies, the combined company will maintain the Community Banking Center in Winston-Salem, NC and the Wholesale Banking Center in Atlanta, GA. This continued strong presence is also supported by the combined company's commitment to increase the respective banks' current levels of community investment.

GAAP and Cash EPS accretion per BB&T share in 2021 is expected to be approximately 13% and 17%, respectively (based on Street estimates). GAAP and Cash EPS accretion per SunTrust share in 2021 is expected to be approximately 9% and 16%, respectively (based on Street estimates). SunTrust shareholders will receive a 5% increase in their dividend upon consummation of the transaction based upon each Company's current dividend per share. Under the terms of the merger agreement, SunTrust shareholders will receive 1.295 shares of BB&T for each SunTrust share they own. BB&T shareholders will own approximately 57% and SunTrust shareholders will own approximately 43% of the combined company.

"This is a true merger of equals, combining the best of both companies to create the premier financial institution of the future," said BB&T Chairman and Chief Executive Officer Kelly S. King. "It's an extraordinarily attractive financial proposition that provides the scale needed to compete and win in the rapidly evolving world of financial services. Together with Bill's leadership and our new

SunTrust teammates, we're going to bring the best of both companies forward to serve our clients and communities."

William H. Rogers, Jr., Chairman and Chief Executive Officer of SunTrust, said, "By bringing together these two mission- and purpose-driven institutions, we will accelerate our capacity to invest in transformational technologies for our clients. Our shared culture embraces the disruption of technology and we will take this innovative mindset to expand our leadership in the next chapter of these historic brands. With our geographic position, enhanced scale and leading financial profile, these two companies will achieve substantially more for clients, teammates, associates, communities, and shareholders than we could alone. I have tremendous respect for Kelly, his leadership team and the BB&T associates. We will leverage our respective strengths as we focus together on the future."

**Strategic and Financial Benefits of the Proposed Merger**

- Strong Cultural Alignment: The combined company will preserve and maintain the strong cultures of both BB&T and SunTrust to deliver superior client service and preserve the community bank model to maintain close ties to shared local communities. With its stronger position, it will also deliver a collective set of training, leadership, and development programs to attract and retain the industry's top talent across its expanded career opportunities.
- Leading Financial Profile and Operating Metrics: The combined company will be well positioned to achieve industry-leading financial and operating metrics with the strongest return profile amongst its peers. The expected benefits of the transaction include a pro forma efficiency ratio of 51%, peer best ROATCE of 22% and projected tangible book value per share accretion at close for BB&T shareholders of approximately 11%, or 6% fully accounting for one-time merger charges. The merger is expected to generate an internal rate of return of approximately 18%.
- Increased Profitability and Scale to Drive New Innovations: The combined company will take advantage of its enhanced scale to focus on selecting best of breed systems and processes and making significant investments in technology to create a sustainable competitive advantage in an increasingly digital-first world.
- Revenue Growth Through Complementary Businesses: The combined company will leverage its complementary businesses to generate additional revenue opportunities

7

through BB&T's Community Banking and insurance operation and SunTrust's leading middle market corporate & investment banking business and digital consumer lending platform.
- Significant cost synergies: Expected to deliver approximately $1.6 billion in annual net cost synergies by 2022. The primary sources of cost savings are expected to be in facilities, information technology/systems, shared services, retail banking and third-party vendors.

**New Company Leadership Team, Succession Plan and Governance**

Kelly S. King, Chairman and Chief Executive Officer of BB&T and its bank subsidiary, will serve as Chairman and Chief Executive Officer of the combined company and its bank subsidiary until Sept. 12, 2021, after which time he will serve as Executive Chairman of both entities until March 12, 2022. King will continue to serve on the Board of Directors of the combined company until the end of 2023.

William H. Rogers, Jr., Chairman and Chief Executive Officer of SunTrust will serve as President and Chief Operating Officer of the combined company and its bank subsidiary until Sept. 12, 2021, at which time he will become Chief Executive Officer of the combined company and its bank subsidiary. He will also hold a seat on the combined company's Board of Directors through his position as President and Chief Operating Officer and then Chief Executive Officer. On March 12, 2022, Rogers will also become Chairman and Chief Executive Officer of the combined company and its bank subsidiary.

Upon the closing of the transaction, the Board of Directors of the combined company will consist of members equally split between BB&T and SunTrust's current Directors. David M. Ratcliffe, current Lead Director of SunTrust, will serve as Lead Director of the combined company until March 12, 2022 after which the Lead Director will be a legacy BB&T Director.

The combined company's executive management team will be comprised equally from SunTrust and BB&T. They include Chris Henson, Clarke Starnes (Chief Risk Officer), Daryl Bible (Chief Financial Officer), Allison Dukes, Brant Standridge, David Weaver, Dontá Wilson, Ellen Fitzsimmons, Ellen Koebler, Hugh (Beau) Cummins, Joseph Thompson and Scott Case.

**Timing and Approvals**

The merger is expected to close in the fourth quarter of 2019, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

**Advisors**

RBC Capital Markets served as financial advisor and Wachtell, Lipton, Rosen & Katz served as legal counsel to BB&T in this transaction. Goldman Sachs and SunTrust Robinson Humphrey served as financial advisors and Sullivan & Cromwell served as legal counsel to SunTrust in this transaction.

25. The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth. More specifically, on January 18, 2019, SunTrust announced its fourth quarter 2018 results. The Company's diluted earnings per share was $5.7, an increase of 28% from 2017 and 40% relative to 2017 adjusted earnings per share. Total revenue was up 3% sequentially and 4% year-over-year.

26. Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by cutting off their ability to benefit from the Company's continued growth.

27. Despite the inadequate Merger Consideration, the Board has agreed to Proposed Transaction, while rejecting a clearly superior offer from Merck and refusing to fairly negotiate with the superior bidder. It is therefore imperative that SunTrust's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

9

**B.**     **Conflicts of Interests in the Proposed Transaction**

28.     The Board along with certain Company's executive officers are conflicted because they have secured unique benefits for themselves from the Proposed Transaction not shared with the public stockholders.

29.     Individual Defendant Rogers will serve as President and Chief Operating Officer of the combined company and its bank subsidiary until September 12, 2012, at which time he will become CEO of the combined company and its bank subsidiary. Rogers will also hold a seat on the combined company's Board, and will become Chairman of that Board on March 12, 2022.

30.     Upon the closing of the Proposed Transaction, the Board of the combined company will consist of members equally split between BB&T and SunTrust's current board members. At that time, the combined company's executive management team will be comprised equally from both companies.

**C.**     **The Materially Incomplete and Misleading Registration Statement**

31.     On March 8, 2019, SunTrust and BB&T jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Material Omissions Regarding Financial Projections of BB&T and SunTrust*

10

32. The Registration Statement omits material information regarding the Company's and BB&T's financial projections relied upon by Goldman for its analyses.

33. For example, the Registration Statement set forth that in connection with its opinion, Goldman reviewed and considered, among other things:

- certain internal financial analyses and forecasts for SunTrust on a stand-alone basis prepared by its management and certain financial analyses and forecasts for BB&T on a stand-alone basis and pro forma for the merger prepared by the management of SunTrust, in each case, as approved for Goldman Sachs' use by SunTrust (referred to in this section as the "forecasts"), including certain operating synergies projected by the management of SunTrust to result from the merger, as approved for Goldman Sachs' use by SunTrust (referred to in this section as the "synergies").

Registration Statement at 61.

34. With respect to the *Illustrative Discounted Dividend Analyses for SunTrust on a Stand-Alone Basis*, the Registration Statement fails to disclose: (i) implied distribution to SunTrust's shareholders over the period beginning December 31, 2018 through December 31, 2023 based on the forecasts, (ii) range of illustrative terminal values for SunTrust as of December 31, 2023; (iii) the total number of fully diluted shares of SunTrust common stock outstanding as provided by SunTrust management to derive illustrative present values per share of SunTrust common stock on a stand-alone basis; and (iv) the specific inputs and assumptions underlying the range of discount rates from 8.5% to 10.5%.

35. With respect to the *Illustrative Discounted Dividend Analyses for BB&T on a Stand-Alone Basis*, the Registration Statement fails to disclose: (i) implied distribution to BB&T's shareholders over the period beginning December 31, 2018 through December 2023, on a stand-alone basis; (ii) the estimate of BB&T's terminal year (2024) net income on a stand-alone basis, as reflected in the forecasts; (iii) the total number of fully diluted shares of BB&T

common stock outstanding as provided by SunTrust; (iv) the specific inputs and assumptions underlying the range of discount rates from 7.5% to 9.5%.

36. With respect to the *Illustrative Present Value of Future Stock Price Analyses for SunTrust*, the Registration Statement fails to disclose: (i) the specific inputs and assumptions underlying the discount rate of 9.5%; and the projections of estimated earnings per share and share count used by Goldman Sachs.

37. With respect to the *Selected Companies Analyses for BB&T*, the Registration Statement fails to disclose the individual multiples and financial benchmarking metrics for each company observed by Goldman Sachs.

38. With respect to the *Illustrative Present Value of Future Stock Price Analyses for BB&T on a Stand-Alone Basis*, the Registration Statement fails to disclose: (i) the specific inputs and assumptions underlying the discount rate of 8.5%; and (ii) the projections of estimated earnings per share and share count used by Goldman Sachs.

39. With respect to the *Illustrative Present Value of Future Stock Price Analyses for SunTrust Shares on a Pro Forma Basis*, the Registration Statement fails to disclose: (i) the projections of estimated earnings per share and share count used by Goldman Sachs; (ii) the specific inputs and assumptions underlying the discount rate of 9.0%; and (iii) the synergies taken into account by Goldman Sachs.

40. With respect to the *Illustrative Discounted Dividend Analyses for SunTrust Shares on a Pro Forma Basis*, the Registration Statement fails to disclose: (i) implied distributions to BB&T's shareholders on a pro forma basis over the period beginning December 31, 2019 through December 31, 2023 based on the forecasts, (ii) the synergies taken into account by Goldman Sachs; (iii) range of illustrative terminal values for SunTrust as of December 31, 2023;

(iv) the specific inputs and assumptions underlying the range of discount rates from 8.0% to 10.0%; (v) the total number of fully diluted shares of BB&T common stock outstanding; and (vi) the number of shares of BB&T common stock anticipated to be issued in the Proposed Transaction.

41. With respect to the *Illustrative Contribution Analysis*, the Registration Statement fails to disclose (i) the implied equity contributions of BB&T and SunTrust to the pro forma combined company, including: closing stock prices of each company as of February 4, 2019, average closing stock prices of each company for the six (6)-month, one (1)- year, three (3)-year and five (5)-year periods ended February 4, 2019, actual net income for 2018, and estimated net income for 2019 through 2020; and (ii) the number of fully diluted shares of BB&T common stock and SunTrust common stock outstanding as of February 4, 2019, as provided by SunTrust management.

42. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, amongst other things: the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

46. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

47. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the

Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

48. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of SunTrust within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of SunTrust, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of SunTrust, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of SunTrust, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

53. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons,

these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: March 12, 2019                                  Respectfully submitted,

**WOLF HALDENSTEIN ADLER**

**FREEMAN & HERZ LLP**

By: */s/ Gloria Kui Melwani*
    Gloria Kui Melwani (GM5661)
    270 Madison Avenue
    New York, New York 10016
    Telephone: 212-545-4600
    Facsimile: 212-686-0114
    Email: melwani@whafh.com

*Attorneys for Plaintiff*